## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 13-30072** |
| | ) | |
| **GREGORY TORAN,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION

**SUE E. MYERSCOUGH, U.S. District Judge.**

Defendant Gregory Toran has filed a Motion for New Trial (d/e 183) asserting (1) that he received ineffective assistance of counsel because the Court's refusal to release the full amount of funds in escrow requested by Defendant prevented counsel from purchasing the software necessary to thoroughly review the discovery; (2) the Court erred by admitting the summary charts into evidence; and (3) the evidence was insufficient to find Defendant guilty beyond a reasonable doubt.  In the alternative, Defendant asks that, if a new trial is not granted, this Court immediately appoint him counsel for

post-trial and appellate proceedings because he is now indigent and cannot afford an attorney.

For the reasons that follow, the Motion for New Trial is DENIED.  A hearing on Defendant's request for the appointment of post-trial counsel is set for September 23, 2016 at 11:30 a.m. by video conference.

## I. BACKGROUND

On September 11, 2013, Defendant and Co-Defendant Tina Kimbrough were charged by Indictment (d/e 1) with conspiracy to defraud the United States in violation of 18 U.S.C. § 371 (Count 1) and seven counts of mail fraud in violation of 18 U.S.C § 1341 (Counts 2-8).  In addition, Kimbrough was charged with making a false statement in violation of 18 U.S.C. § 1035 (Count 9).  The Indictment also contained forfeiture allegations.  In general, the Indictment alleged that Defendant and Kimbrough, owners of IBT Transportation, LLC, submitted fraudulent claims to the Illinois Department of Healthcare and Family Services for transportation services that were either not provided or not provided to the extent billed.

On October 4, 2013, attorneys Victor P. Henderson and Samuel E. Adam entered their appearances on behalf of Defendant and Kimbrough (d/e 6, 7). On October 21, 2013, Attorney D'Anthony V. Thedford entered his appearance for Kimbrough and Attorneys Henderson and Adam withdrew as Kimbrough's counsel. See Appearance of Counsel (d/e 9); October 23, 2013 Text Order. On October 23, 2013, an initial appearance and arraignment was held, a trial date was scheduled, and discovery was ordered to commence.

The Government states that, on November 14, 2013, the Government provided defense counsel with 11 computer discs (CDs) containing virtually all of the documentary evidence in the Government's possession at the time. See Gov't Resp. at 2 (d/e 191), Exhibit 1 (d/e 191-1). The documents included hospital records, Medicaid records, and records from financial institutions. The documents were searchable by name or keyword using an "IPRO viewer."

The Government advised defense counsel that reports of interviews and grand jury witness transcripts would be available within 14 days. The Government further advised defense counsel

of additional evidence in electronic format, such as computer hard drives, billing data, and email accounts that could be viewed at the United States Attorney's Office in Springfield, Illinois.

On November 27, 2013, the Government provided defense counsel with a CD containing reports of interviews and transcripts of grand jury witnesses. Gov't Resp. at 2, Exhibit 2 (d/e 191-2). The Government again advised defense counsel of additional evidence in electronic format that could be viewed at the Springfield office.

In January 2014 and May 2014, Defendant moved to continue the trial to allow him to review the discovery. See d/e 25, 31. The motions were granted. On May 16, 2014, the Government provided defense counsel with two CDs containing e-mail account data pertaining to the account registered to Defendant, copies of search warrants and applications used to acquire e-mail account data, and three spreadsheets that attempted to track the billing of IBT Transportation by month when there was no corresponding medical service provided to the recipient on that date. See Gov't Resp. at 2-3, Exhibit 3 (d/e 191-3). The Government also made the e-mail accounts available for review in Springfield. Exhibit 3.

The week of June 2, 2014, Defendant and a companion visited the U.S. Attorney's Office in Springfield and reviewed e-mail records.  Thomas E. Henrikson Aff., Exhibit 4 (d/e 191-4).  On June 20, 2014, the Government provided defense counsel with two CDs that contained e-mails Defendant identified as possibly relevant to his preparation or defense or that Defendant felt were exculpatory.  Exhibit 6 (d/e 191-6).

Defendant returned to the Springfield U.S. Attorney's Office again on or about July 14, 2014 to resume his review of e-mail records.  Henrikson Aff., Exhibit 4.  On July 30, 2014, the Government provided defense counsel with two CDs that contained documents Defendant asked be provided to him after the July 2014 review.  Gov't Resp. at 3, Exhibit 7 (d/e 191-7).  The Government also agreed to copy and send to defense counsel all of the e-mail account data in the Government's control to avoid the need for Defendant to travel to the U.S. Attorney's Office in Springfield in the future.

On September 18, 2014, the Government provided defense counsel with one CD of supplemental discovery material, including patient records, billing records, hospital attendance records,

Page 5 of 23

medical records, recorded phone calls, and supplemental interview
reports.  The Government also sent defense counsel five CDs
containing telephone calls from the prior approval vendor's
systems regarding IBT Transportation passengers.   Finally, the
Government sent 15 CDs containing a full set of the e-mail
accounts obtained by the Government which consisted of
correspondence to and from IBT Transportation.  Exhibit 8 (d/e
191-8).  The Government also advised defense counsel that a copy
of the hard-drive of Nirobia Smith's laptop computer was available
if Defendant would purchase a hard drive of at least 500 GB and
provide it to the FBI for copying.  Smith was Defendant's ex-fiancée
and an IBT Transportation biller.  The hard-drive was imaged
using a program called Forensic Toolkit, and it was the
Government attorney's understanding that a free version of the
software was available for download from the internet.  Exhibit 8.
The Government provided additional discovery to defense counsel
in November 2014.  Gov't Resp. Exhibit 9 (d/e 191-9) (providing, at
defense counsel's request, the raw, unfiltered data from the e-mail
accounts, and "mirrored images of the hard drives" defense
counsel requested).

In October 2014, Defendant filed a Motion to Release Funds Held in Escrow (d/e 38).  Defendant asserted that he needed to invest in hardware and software to review the discovery produced by the Government and identify the relevant information. Defendant asserted that the "time and cost estimates for this phase of electronic discovery will cost Mr. Toran $25,000 to $50,000 using the most efficient and effective means possible." Mot. to Release Funds at 4, ¶ 18 (d/e 38).  Defendant also claimed that attorney's fees to mount an effective defense would total approximately $125,000 to $150,000 through trial.  Id. ¶¶ 19, 20. Therefore, Defendant asked the Court to release $175,000 of the money held in escrow from the sale of two properties—9544 South Vanderpoel Avenue and 5739-59 South Halsted, both in Chicago— on which the Government had filed liens.  Id.  ¶ 21.

On December 1, 2014, Defendant filed Evidence to Supplement Motion to Release Funds Held in Escrow for Gregory Toran (d/e 46).   Defendant attached thereto his affidavit, which indicated that Defendant received $295 a month from his plumber's pension after taxes, $1,080 from social security, $550 from his disability pension, and $1,500 rental income for a total of

$3,425.  He stated his monthly expenses totaled $3,600 per month, which included property taxes of approximately $1,300.

The Court held an evidentiary hearing on February 5, 2015, at which the Court found that Defendant had not presented a bona fide reason for use of the escrowed funds.  The Court granted Defendant's request for a continuance to obtain further evidence.

On April 1, 2015, Defendant filed a supplemental motion (d/e 56) in which counsel asked, in the alternative, for leave to withdraw if the Court did not release the funds.  Defense counsel asserted they would not be able to provide Defendant with effective assistance of counsel without the funds needed for his defense, including no less than $25,000 for software, as well as attorney and paralegal time necessary to prepare for a three-week trial, attorney time for the three week trial, and out-of-pocket expenses such as travel and lodging for an extended proceeding.

On April 21, 2015, this Court found that Defendant demonstrated a bona fide need to use the restrained assets to conduct his defense.  See April 21, 2015 Text Order.  On April 27, 2015, the Court held an evidentiary hearing.  On May 1, 2015, the Court entered an Opinion (d/e 66) finding that the Government

had shown probable cause to believe that all of the funds held in escrow related to the South Halsted properties and $69,381.32 of the funds held in escrow related to the Vanderpoel property were subject to forfeiture.  Therefore, the Court released only $49,555.38 of the escrowed funds.  The Court set defense counsel's motion for leave to withdraw for a status conference.

At the May 11, 2015 status conference, the Court denied counsel's motion to withdraw.  The Court found that withdrawal would be prejudicial to Defendant's case given that discovery was completed, Defendant's attorneys were exceptional criminal lawyers, and the case was set for trial in June.  The Court also denied defense counsel's oral request for an award of fees of $25,000 under the Criminal Justice Act to obtain an expert to search discovery or, in the alternative, for the Government to provide personnel to access documents.  The Government did agree, however, to work with defense counsel as to electronic accessing and searching of discovery.

Defendant's motions to continue trial filed in May, June, and September of 2015 were all granted.  On September 16, 2015, the Court set the trial for January 5, 2016.

On January 4, 2016, the Court held an emergency hearing on a potential conflict of interest regarding Defendant's attorneys. Specifically, Defendant's attorneys previously represented the co-defendant, Tina Kimbrough, who was now going to testify against Defendant. The Court appointed an attorney to meet with Defendant and advise him on whether to waive any conflict of interest. The trial was continued.

On January 25, 2016, both Defendant and Kimbrough waived any conflict of interest with the understanding that the Court would appoint an attorney to represent Defendant for the purpose of conducting the cross-examination of Kimbrough at trial. The Court reset the trial to May 17, 2016. On February 2, 2016, the Court appointed an attorney under the Criminal Justice Act to represent Defendant for the specific purpose of cross-examining Kimbrough.

On April 4, 2016, Defendant filed a Motion to Reconsider Motion to Release Funds Held in Escrow for Gregory Toran (d/e 109). Defendant asserted that the Court's previous release of only $49,555.38 of the funds held in escrow was insufficient because Defendant was not able to pay for the hardware and software to

view and sort through the voluminous discovery.  Defendant

sought the release of an additional $19,381.12 held in escrow.

On April 25, 2016, Defendant filed a Motion to Release Funds

Held in Escrow for Gregory Toran's Property Taxes (d/e 116).

Defendant requested that the Court release $2,388.24 of the funds

held in escrow so that Defendant could pay his delinquent property

tax bill for the property at 1448 W. 112th Place and 1450 W. 112th

Place in Chicago, which was due by May 1, 2016.

On April 26, 2016, the Court denied Defendant's Motion to

Reconsider Motion to Release Funds Held in Escrow for Gregory

Toran (d/e 109) but granted Defendant's Motion to release funds

for the payment of property taxes.  See April 26, 2016 Minute

Entry.  However, the Court also directed Defendant "to set aside

sufficient funds from the rental income from his rental properties

to pay the property taxes and insurance on those rental properties

so that future requests to release funds to pay taxes or insurance

will not be necessary."  Id.

On May 6, 2016, Defendant waived his right to a jury trial,

requested the Court try all issues of fact and law without a jury,

and waived his right to special findings.  Waiver of Trial by Jury

(d/e 125).  The bench trial commenced on May 17, 2016.  At the
beginning of the trial, the parties filed a Business Records
Stipulation (d/e 131) admitting all of the primary documents,
records, and other exhibits without objection to hearsay,
authenticity, foundation, confrontation, or any other basis except
relevancy.  This stipulation did not include the summary charts.

On July 25, 2016, the Court announced the verdict of guilty
on all counts against Defendant.  A written verdict was filed July
26, 2016.  On August 11, 2016, Defendant filed the Motion for New
Trial (d/e 183) at issue herein.

## II. LEGAL STANDARD

Rule 33 of the Federal Rules of Criminal Procedure provides
that a court may grant a new trial "if the interest of justice so
requires."  Fed. R. Crim. P. 33(a).  In the case of a bench trial, the
court may take additional testimony and enter a new judgment.
Id.  A motion for a new trial on any ground other than newly
discovered evidence must be filed within 14 days of the finding of
guilt.  Fed. R. Crim. P. 33(b)(2).  In this case, on the day the Court
entered the verdict, Defendant requested, and the Court granted,

an extension of time to file the motion for a new trial.  Therefore, the motion for a new trial was timely filed.

Whether to grant a motion for a new trial is within the district court's discretion.  United States v. Reed, 875 F.2d 107, 113 (7th Cir.1989).  The court should grant a motion for a new trial only if the evidence "preponderate[s] heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand[.]" Id. (quoting United States v. Martinez, 763 F.2d 1297, 1312–13 (11th Cir.1985)); see also United States v. Chambers, 642 F.3d 588, 592 (7th Cir. 2011) (a motion for a new trial is granted only where the court finds the verdict is so contrary to the weight of the evidence that the interests of justice require a new trial).  When a defendant seeks a new trial because of an alleged trial error, the court will grant a new trial if there is a "reasonable possibility that the error had a prejudicial effect upon the jury's verdict," see United States v. Van Eyl, 468 F.3d 428, 436 (7th Cir.2006), or if the error "jeopardized the defendant's substantial rights." United States v. Reed, 986 F.2d 191, 192 (7th Cir. 1993).  Motions for a new trial are granted "sparingly," or "only in those really 'exceptional cases.'" Reed, 875 F.2d at 113 (quoting Martinez, 763 F.2d at 1312-13).

An evidentiary hearing is not mandatory in all cases, and Defendant does not request an evidentiary hearing.  See United States v. Taglia, 922 F.2d 413, 419 (7th Cir. 1991).  The district court has the discretion whether to grant an evidentiary hearing, and the court may deny an evidentiary hearing if "there is no reason to suppose that a hearing would produce evidence justifying the grant of a new trial."  Id.  The Court finds an evidentiary hearing is not needed in this case.

### III. ANALYSIS

Defendant seeks a new trial on three grounds: (1) that he received ineffective assistance of counsel because the Court's refusal to release the full amount of funds in escrow requested by Defendant prevented counsel from purchasing the software necessary to thoroughly review the discovery; (2) the Court erred by admitting the summary charts into evidence; and (3) the evidence was insufficient to find Defendant guilty beyond a reasonable doubt.  In the alternative, if a new trial is not granted, Defendant asks that the Court immediately appoint him counsel for post-trial and appellate proceedings.

## A.   Defendant Has Not Established Ineffective Assistance of Counsel

Defendant argues that he received ineffective assistance of counsel.  This claim is somewhat unusual because it is filed by Defendant's trial attorneys, who are essentially claiming that they provided ineffective assistance of counsel.

Defendant asserts that the Court's refusal to release the full amount of escrowed funds requested by Defendant deprived Defendant of effective assistance of counsel both prior to and at trial.  Defendant claims he could not purchase the software required to thoroughly review the voluminous discovery produced by the Government.  Defendant states, "Based on the discovery that wasn't thoroughly reviewed, counsel may not have filed appropriate pretrial motions or called relevant witnesses."  Mot. at 3 (d/e 183).  According to Defendant, if the requested funds had been released in full, the outcome of the trial would have been different.

To establish a claim of ineffective assistance of counsel, a defendant must show: (1) his counsel's performance fell below an objective standard of reasonableness; and (2) there is a reasonable

probability that, but for counsel's errors, the result of the proceeding would have been different. <u>Strickland v. Washington</u>, 466 U.S. 668, 668, 694 (1984). Scrutiny of counsel's performance is deferential, and the court presumes that counsel's conduct "falls within the wide range of reasonable professional assistance." <u>Id.</u> at 689. In addition, while adequate pretrial preparation is essential to represent a criminal defendant, the amount of preparation is a "matter of professional judgment." <u>United States v. Berkowitz</u>, 927 F.2d 1376, 1382 (7th Cir. 1991).

In this case, Defendant has not shown that counsel's performance fell below an objective standard of reasonableness. Defendant only asserts that he could not purchase the software required to thoroughly review the discovery. However, the record demonstrates that the Government provided or made available the discovery to defense counsel far in advance of trial, and the Court granted Defendant numerous continuances to allow defense counsel time to review the discovery. In addition, the Court released from the escrowed funds enough money for defense counsel to purchase the software had defense counsel chosen to do so. That counsel did not have the most efficient means of

reviewing the discovery does not demonstrate ineffective assistance of counsel.  Moreover, defense counsel stipulated to the admission of numerous business records and effectively cross-examined witnesses about the documents in question, all of which strongly suggests a sufficient review of the discovery by defense counsel as well as a strategic decision on counsel's part on how best to defend the case.  As noted, a defendant trying to show that counsel's performance was deficient must overcome a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Strickland, 466 U.S. at 689.  Defendant must also show what a more thorough investigation would have produced.  Hardamon v. United States, 319 F.3d 943, 951 (7th Cir. 2003) (noting that a petitioner who alleges that counsel was ineffective for failing to investigate must show what the investigation would have produced); Bustamante v. United States, No. 08 C 3508, 2009 WL 1444716, at *2 (N.D. Ill. May 21, 2009) (noting that "[u]nsupported assertions that counsel did not review discovery or investigate are insufficient" to support an ineffective assistance of counsel claim).  Defendant has failed to do so here

and, therefore, has failed to overcome the presumption that counsel's performance was reasonable.

Moreover, Defendant has not established prejudice. Defendant only speculates that a thorough review might have produced an "appropriate pretrial motion" or resulted in counsel calling "relevant witnesses." Mot. at 3. Conclusory allegations do not support the prejudice component of an ineffective assistance of counsel claim. United States v. Farr, 297 F.3d 651, 658 (7th Cir. 2002). Consequently, Defendant has not established that he received ineffective assistance of counsel.

## B.   The Summary Charts Were Properly Admitted

At trial, the Government sought the admission of several summary charts pursuant to Federal Rule of Evidence 1006, which the Court admitted over Defendant's objections. See Daily Exhibit List (d/e 144) (listing 23 summary chart exhibits). In his Motion for New Trial, Defendant argues that the Court erred by admitting the summary charts because the evidence summarized by the charts could have been examined by the Court and the Court was capable of comprehending the evidence. Defendant also argues

that the summary charts were unduly prejudicial and suggestive of inferences that this Court was equally qualified to draw.

Rule 1006 of the Federal Rules of Evidence provides that a proponent may use a summary or chart to prove the content of voluminous writings that cannot be conveniently examined in court.  Fed. R. Evid. 1006.  The proponent must make the originals or duplicates available for copying or examination by the other parties at a reasonable time and place, and the court may order the proponent to produce the originals or duplicates in court  Id. Moreover, the summary exhibits must accurately summarize the documents and must not make arguments about the inferences the trier of fact should draw from the documents.  United States v. White, 737 F.3d 1121, 1135 (7th Cir. 2013) (also noting that summary exhibits admitted under Rule 1006 are substantive evidence).

The Court has again reviewed each summary chart and finds they were properly admitted.  Each of the requirements of Rule 1006 were met.

The underlying documents were too voluminous to be conveniently examined in court.  The Government made the

underlying documents available to defense counsel.  Defendant does not argue that the summary charts do not accurately reflect the underlying data.  Moreover, the makers of the summary charts both testified regarding the summary charts and were subject to cross-examination.

Defendant also argues that the summary charts were admitted in violation of Federal Rule of Evidence 403 because they were unduly prejudicial and suggestive of inferences that the Court was equally qualified to draw.  The Court disagrees.  The summary charts summarized the underlying documents and broke down the information into various categories, including by date, by type of service, and by patient.  In addition, "Rule 403's concerns carry significantly less weight in a bench trial, where there is a presumption that the court is not improperly influenced by the evidence brought before it."  City of Joliet v. Mid-City Nat'l Bank of Chi., No. 05 C 6746, 2012 WL 5463792, at *11 (N.D. Ill. Nov. 5, 2012).  The Court did not err by admitting the summary charts pursuant to Rule 1006, and Defendant's request for a new trial on this ground is denied.

## C.   The Evidence Against Defendant Was Sufficient to Find Defendant Guilty on All Counts

Defendant also seeks a new trial on the ground that the evidence against him was insufficient to find him guilty beyond a reasonable doubt.  The extent of Defendant's argument is that the Government failed to establish the elements of each charge against Defendant beyond a reasonable doubt.  See Mot. at 5 (d/e 183).

In a trial that lasted 12 days, the Government called several witnesses who worked at IBT Transportation, including Defendant's business partner and co-defendant, Kimbrough.  The Government introduced records from IBT Transportation and the Illinois Department of Healthcare and Family Services, as well as medical billing and patient records.  Despite the fact that Defendant waived any special findings, this Court detailed some of the evidence that supported the verdict against Defendant on all counts.  Court Verdict (d/e 175).  Defendant has not made any argument to support his claim that the evidence was insufficient.

Therefore, the Court finds the argument forfeited.  <u>See, e.g.</u>, <u>United States v. Hassebrock</u>, 663 F.3d 906, 914 (7th Cir. 2011) (finding undeveloped argument waived).  Even if Defendant did not forfeit the claim, the Court incorporates herein its written Court Verdict (d/e 175), which details some of the evidence that supported the verdict.  The Court concludes that sufficient evidence supports the verdict, and Defendant's motion for a new trial on this ground is denied.

## D.   The Court Sets for Hearing Defendant's Request for the Appointment of Counsel

Finally, Defendant asks that, if a new trial is not granted, the Court immediately appoint him counsel for post-trial and appellate proceedings.  Defendant asserts he is now indigent and cannot afford counsel.  The Court sets this request for a hearing, by video conference, on September 23, 2016 at 11:30 a.m., the same date and time this case is set on other matters.

## IV. CONCLUSION

For the reasons stated, Defendant's Motion for New Trial (d/e 183) is DENIED.  Defendant's request for the appointment of

counsel is set for hearing, by video conference, on September 23, 2016 at 11:30 a.m.

ENTER: September 8, 2016

FOR THE COURT:

    s/Sue E. Myerscough
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE